# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Filed June 8, 2007

No. 04-1200

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

NATIONAL ENVIRONMENTAL DEVELOPMENT ASSOCIATION'S
CLEAN AIR REGULATORY PROJECT, ET AL.,
INTERVENORS

———

Consolidated with
No. 04-1201, et al.

———

On Petitions for Rehearing

———

*David S. Baron*, *Barbara B. Baird*, *Adam Babich*, *Ann B. Weeks*, and *Jonathan F. Lewis* were on the petition for rehearing filed by the Environmental Petitioners and South Coast Air Quality Management District and the response to the petition for rehearing filed by the Environmental Protection Agency.

*John C. Cruden*, Deputy Assistant Attorney General, U.S.

Department of Justice, *David J. Kaplan* and *Natalia T. Sorgente*, Attorneys, and *Jan M. Tierney*, Attorney, U.S. Environmental Protection Agency were on the petition for rehearing filed by the Environmental Protection Agency.

*Martha Coakley*, Attorney General, Attorney General's Office of Commonwealth of Massachusetts, *William L. Pardee*, Assistant Attorney General, *Richard Blumenthal*, Attorney General, Attorney General's Office of the State of Connecticut, *Kimberly Massicotte* and *Matthew Levine*, Assistant Attorneys General, *Joseph R. Biden, III*, Attorney General, Attorney General's Office of the State of Delaware, *Valerie S. Csizmadia*, Deputy Attorney General, *G. Steven Rowe*, Attorney General, Attorney General's Office of the State of Maine, *Gerald D. Reid*, Assistant Attorney General, *Andrew M. Cuomo*, Attorney General, Attorney General's Office of the State of New York, *Barbara Underwood*, Solicitor General, *David A. Munro* and *Lisa S. Kwong*, Assistant Attorneys General, *Robert A. Reiley*, Counsel, Commonwealth of Pennsylvania, Department of Environmental Protection, *Linda Singer*, Attorney General, Attorney General's Office of the District of Columbia, *Todd S. Kim*, Solicitor General, *Edward S. Schwab*, Deputy Solicitor General, and *Donna M. Murasky*, Senior Litigation Counsel, were on the response of petitioner Commonwealth of Massachusetts, et al., to the petition for rehearing filed by the Environmental Protection Agency.

*Charles H. Knauss*, *Robert V. Zener*, and *Robert S. Taylor* were on the petition for rehearing filed by the Industry Petitioners.

*Norman W. Fichthorn* and *Lucinda Minton Langworthy* were on the petition for rehearing filed by Intervenor-Respondents American Chemistry Council, et al.

Before: HENDERSON, ROGERS and BROWN, *Circuit Judges*.

ROGERS, *Circuit Judge*:  Before the court are five petitions for rehearing[1] with regard to the vacatur and remand of a final rule implementing the eight-hour national ambient air quality standard ("NAAQS") for ozone under the Clean Air Act ("the CAA"), 42 U.S.C. § 7401 *et seq.  See* Final Phase 1 Rule To Implement the 8-Hour Ozone NAAQS, 69 Fed. Reg. 23,951 (Apr. 30, 2004) (codified at 40 C.F.R. parts 40, 51, 81) ("2004 Rule").  The petitions overlap in part, challenging principally the court's interpretation of the statutory gap, described in *Whitman v. American Trucking Ass'ns*, 531 U.S. 457 (2001), that arises from the decision of the Environmental Protection Agency ("EPA") to change from a one-hour to an eight-hour measurement system for ozone, and the court's construction of the CAA's anti-backsliding provision.  *See S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882 (D.C. Cir. 2006).  None of these challenges has merit and we deny the petitions.  However, we grant the joint request of EPA and the Environmental Petitioners to clarify the description of the required conformity determinations and to modify the scope of the vacatur of the 2004 Rule.

**I.**

In *Whitman*, the Supreme Court acknowledged that Subpart 2 of the CAA "unquestionably" provides for classifying nonattainment ozone areas even after EPA changed the system for measuring ozone levels from the highest annual one-hour average concentration to the fourth-highest annual eight-hour

---

[1]  Separate petitions for rehearing were filed by a group of Environmental Petitioners, the Chamber of Greater Baton Rouge et al. ("Baton Rouge"), National Petrochemical & Refiners Association ("NPRA"), American Chemistry Council et al. ("ACC"), and EPA.

average concentration. 531 U.S. at 482. However, because Congress had defined the classification system in 1990 in terms of one-hour ozone, there were several limited gaps in the CAA. *See id.* at 484. This court concluded that EPA had misconstrued the extent of the gaps to exercise its interpretative discretion more broadly than the Supreme Court had authorized. *See S. Coast Air Quality Mgmt. Dist.*, 472 F.3d at 892-94. In its petition for rehearing, EPA disagrees with our interpretation of the following passage in *Whitman*:

> [T]o the extent that the new ozone standard is stricter than the old one, *see* 62 Fed. Reg. 38856, 38858 (1997) (8-hour standard of 0.09 ppm rather than 0.08 ppm would have "generally represent[ed] the continuation of the [old] level of protection"), the classification system of Subpart 2 contains a gap, because it fails to classify areas whose ozone levels are greater than the new standard (and thus nonattaining) but less than the approximation of the old standard codified by Table 1.

531 U.S. at 483 (citation omitted). EPA maintains that "the approximation of the old standard codified by Table 1" does not refer to the previous citation, which repeats EPA's assertion in the 1997 Rule that 0.09 ppm under the eight-hour measurement scheme is roughly equivalent to the old standard of 0.12 ppm of one-hour ozone. Instead, according to EPA, the "approximation" being referenced is 0.121 ppm of one-hour ozone, the lowest nonattaining design value in Table 1. *See* EPA Pet'n at 4.

EPA's interpretation is irreconcilable with the CAA and *Whitman*. First, every other ozone level referenced in the sentence is in eight-hour terms and there is no signal that the final ozone level (the "approximation") used a different metric. Second, 0.121 is not an "approximation" of 0.12, because an

approximation is typically less precise than the true value. Here, Congress started the statutory Table 1 with the value 0.121 because it is the smallest design value that qualifies as nonattaining. An area with a design value of precisely 0.12 would "meet[]" the NAAQS under section 107 of the CAA, 42 U.S.C. § 7407. Third, nowhere in *Whitman* does the Supreme Court signal that "the approximation of the old standard" is shorthand for 0.121 ppm of one-hour ozone.

EPA also maintains that there can be no eight-hour approximation of the one-hour ozone level because there is no one-to-one correspondence between the two metrics. EPA Pet'n at 5-6. But the lack of a precise equivalence is precisely why an approximation is necessary. The approximation referenced by the court, 0.09 ppm, is not, as EPA suggests, an arbitrary expression of the court's scientific prowess; as acknowledged by the Supreme Court, the approximation comes directly from the rulemaking record, which stated that 0.09 ppm of eight-hour ozone "generally represent[ed] the continuation of the [old] level of protection." *See* 1997 Rule, 62 Fed. Reg. at 38,858. In short, there is every reason to believe that the gap intended by *Whitman* is the gap described by the court in *South Coast Air Quality Management District*, 472 F.3d at 892-93.

EPA next objects to the court's failure to defer, under *Chevron* Step 2, to EPA's application of Subpart 1 to gap areas. The court merely recognized that under *Chevron* agency action that does not constitute a reasonable interpretation of the statute must be vacated. *See id.* at 894. Because Congress sought to reduce EPA discretion by enacting Subpart 2 as part of the 1990 amendments to the CAA, EPA could not reasonably rely upon its preference for regulatory flexibility in setting the boundary between Subpart 1 and Subpart 2. EPA's claim that the court nullified the discretion recognized by the Supreme Court in *Whitman* is meritless. *See Whitman*, 531 U.S. at 484.

## II.

Four petitioners seek rehearing on which aspects of EPA's regulation of one-hour ozone must be retained under the eight-hour ozone NAAQS. *See* 42 U.S.C. § 7502(e).[2] EPA determined that "if Congress intended areas to remain subject to the same level of control where a NAAQS was relaxed, [Congress] also intended that such controls not be weakened where the NAAQS is made more stringent." 2004 Rule, 69 Fed. Reg. at 23,972. Contrary to the rehearing petitions of the Industry Petitioners (NPRA, Baton Rouge, and ACC), EPA's determination that section 172(e) supports the introduction of anti-backsliding measures is reasonable. EPA's interpretation does not violate the plain text of section 172(e), which does not specify how to proceed when the NAAQS is strengthened but the related reclassification would result in weakened controls. The Industry Petitioners would require a negative inference, but their interpretation would have an absurd result, *cf. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 5 (2000), because then EPA could continually "strengthen" a NAAQS by the smallest margin and avoid ever implementing the time-delayed controls mandated by the CAA. *See S. Coast Air Quality Mgmt. Dist.*, 472 F.3d at 902-03. The Industry

---

[2] Section 172(e) of the CAA provides that

> [i]f the Administrator relaxes a national primary ambient air quality standard . . . the Administrator shall . . . promulgate requirements applicable to all areas which have not attained that standard as of the date of such relaxation. Such requirements shall provide for controls which are not less stringent than the controls applicable to areas designated nonattainment before such relaxation.

42 U.S.C. § 7502(e).

Petitioners present nothing to suggest that Congress intended such a glaring loophole and, accordingly, the court properly deferred to EPA's reasonable interpretation.

EPA and the Industry Petitioners claim, however, that in applying EPA's interpretation of section 172(e), the court treated the provision as legally binding and usurped EPA's discretion. Not so. In the rulemaking, EPA concluded that "Congress would have intended that control obligations that applied for purposes of the 1-hour NAAQS should remain in place." Phase 1 Implementation of the 8-Hour Ozone NAAQS: Reconsideration, 70 Fed. Reg. 30,592, 30,593 (May 26, 2005). While the Industry Petitioners renew their arguments that the term "controls" in section 172(e) is ambiguous and that EPA's interpretation eliminating certain controls is entitled to *Chevron* deference, they provide no basis to doubt the court's conclusion that the "controls" at issue had a settled meaning. *See S. Coast Air Quality Mgmt. Dist.*, 472 F.3d at 900-05.

**III.**

We grant the joint request by EPA and the Environmental Petitioners to make explicit that the court's reference to conformity determinations speaks only to the use of one-hour motor vehicle emissions budgets as part of eight-hour conformity determinations until eight-hour motor vehicle emissions budgets are available. *See id.* at 904-05.

We also grant their request that the 2004 Rule be vacated only to the extent that the court has sustained challenges to it. Although certain states and the District of Columbia object to partial vacatur on the ground that this will inequitably exempt Subpart 1 areas from regulation while the remand is pending, complete vacatur of a partially valid rule would only serve to stall progress where it is most needed. EPA is urged to act

promptly in promulgating a revised rule that effectuates the statutory mandate by implementing the eight-hour standard, which was deemed necessary to protect the public health a decade ago.